## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-20076-JAR** |
| **WARREN RICHARDSON,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the government's Motion for an Anonymous Jury (Doc. 88).  Defendant Warren Richardson filed a response, and the government filed a supplement to its motion.  The Court has considered these briefs, as well as the evidence presented at the two-day hearing on the parties' motions in limine, on November 8–9, 2023.  As described more fully below, the Court grants in part and denies in part the government's motion.

### I.      Factual Background

On November 20, 2019, Richardson was charged in a four-count Indictment with (1) conspiring to distribute cocaine base and to possess with intent to distribute cocaine base from about June 1, 2014 to December 17, 2014; (2) unlawfully possessing a firearm on December 13, 2014, after previously being convicted of felony crimes for carrying a firearm in furtherance of drug trafficking and possessing with intent to distribute cocaine base within 1000 feet of a school; (3) possession with intent to distribute cocaine base on December 17, 2014; and (4) using or carrying a firearm on December 17, 2014, in furtherance of drug trafficking.

### A.      Violent Nature of the Crimes Charged

The government intends to present evidence that Richardson unlawfully possessed a firearm on December 13, 2014, when he murdered an informant that had purchased drugs from Richardson and his coconspirators on multiple occasions.  The government also intends to present evidence that during some of the drug purchases from Richardson and coconspirators, there were firearms present; and on two occasions, there were multiple shootings at one location where drugs were purchased from Richardson and coconspirators.

The government further intends to present evidence that Richardson was apprehended on December 18, 2014, after a high-speed chase, and that immediately before that chase, Richardson had committed an armed robbery and a separate armed carjacking while in the possession of a firearm that ballistic forensic examination tied to the murder weapon.[1]  In short, the government intends to present evidence that Richardson and his coconspirators were engaged in a drug conspiracy that was violent, involving multiple shootings and the murder of the informant.  The government further intends to present evidence that Richardson engaged in an armed crime spree in the hours preceding his arrest, just five days after the murder, and was found in possession of a firearm that ballistics examination tied to the murder weapon.

### B.      Ongoing Threat to Others

While awaiting trial in this case, on February 6, 2021, Richardson allegedly stabbed two female guards at the Core Civic pretrial detention facility, nearly killing them.  Richardson has been charged with two counts of attempted murder, two counts of assault with a deadly weapon, possession of contraband (a weapon) in prison, assault of a third Core Civic employee, and a

---

[1] Tool markings on 15 of 16 cartridge cases recovered from the scene of the murder matched cartridge cases from bullets test fired from the recovered fiream.

separate, earlier assault of one of the female guards he allegedly stabbed, in *United States v. Warren Richardson*, 22-cr-20054-DDC.  That case is set for trial in May 2024.  Most recently, Richardson has been detained at USP Leavenworth where he has allegedly started a fire, threatened to assault his former attorney, written threatening messages on cell walls in his own feces, assaulted prison staff by throwing feces at them, and made threats to staff while masturbating.  On August 29, 2022, this Court conducted a competency hearing and determined that Richardson was competent to stand trial.[2]

In its motion to supplement, the government asks the Court to consider its motion for anonymous jury filed in *United States v. Richardson*, 22-cr-20054-DDC, which it filed as an attachment to its supplemental brief[3]  Richardson does not oppose the government's request to supplement the record.  In its supplemental submission, the government outlines its evidence of the attempted murders of the Core Civic guards on February 6, 2021, Richardson's threatening conduct towards one of the guards prior to February 6,  Richardson's assault of another guard on January 30, 2020, Richardson's history of threats toward correctional employees as early as October 27, 2018, Richardson's continued threats after the February 6, 2021 incidents, and his threatening conduct to correctional employees as recently as August 9, 2023.  The government neglected to include with its filings in this case the many attachments to its motion in the 22-cr-20054-DDC case.  However, because the government alternatively asks the Court to take judicial notice of its motion in that case, the Court also considers those attachments because they are

---

[2] Doc. 68.  Although the Court received the Psychiatric Report (Doc. 58) on February 17, 2022, the competency hearing was delayed because Richardson had moved to disqualify his second appointed counsel, necessitating the Court to appoint new counsel.  *See* Docs. 60–62.  Richardson is currently represented by his fourth appointed counsel.

[3] Doc. 119-1.

matters of public record and not subject to reasonable dispute.  These records include correction officer reports of the many incidents of threatening conduct by Richardson.[4]

As early as October 27, 2018, while detained at Core Civic in the 1999 case,[5] Richardson threatened to kill correctional officers' children, threatened officers, and became physically aggressive and kicked staff.  He reportedly threatened violent actions against guards on December 16, 2020.  On this same day, officers found a homemade weapon, a sharpened six-inch piece of metal in Richardson's cell.

During his detention on the instant charges, Richardson reportedly threatened M.L. by telling her he could make a phone call and someone would be in the parking lot and shoot Core Civic employees.  After that threat, Richardson was placed in segregated housing.  On January 30, 2021, while in segregation, he allegedly (as charged) assaulted another guard, B.L. by splashing bodily fluids at him and verbally threatening him.

On February 6, 2021, Richardson allegedly (as charged), threw boiling liquid at guard M.L.'s face, punched and kicked her, and stabbed her multiple times in the torso and head with a large, hand-made knife.  He then allegedly (as charged) lunged toward guard D.P., kicked her to the ground, stabbed her, and punched her in the jaw.  The attacks were captured on surveillance video.  Both M.L. and D.P. were hospitalized and underwent surgery; M.L was hospitalized from February 6 through February 19, and then transferred to inpatient rehabilitation until March 5.  Both M.L. and D.P. have required continued medical care for their injuries.

After the February 6, 2021 events, Richardson has allegedly continued to threaten correctional officers, including threatening to kill an officer on February 8, 2021.  On March 27,

---

[4] *See* Fed. R. Evid. 201(b); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[5] On October 10, 2018, Judge Murguia revoked Richardson's term of supervised release and imposed a sentence of 36 months in Case No. 99-cr-20081-CM.

2023, while in the U.S. Marshal cell block in this courthouse, Richardson stated that he was going to "fuck up a guard at USP Leavenworth," and that it was time to shed blood.[6]  He further allegedly told a Deputy Marshal that attorneys are not safe either and he would "come across the table" at his attorney, bite him, and that he would be hard to pull off his attorney.[7]

On August 6, 2023, Richardson reportedly threatened to throw a bag of feces at a guard, L.E., threatened L.E., and told L.E. "my boys will be waiting to smoke your ass after work."[8] On August 7, Richardson reportedly threw feces at L.E. and threatened to kill L.E. On August 8, Richardson again threatened L.E., stating "[i]f I don't kill you my son will.  He watches you every day when you leave work.  You're a dead man."[9]  Later that day, Richardson threatened to sexually assault L.E.  On August 9, 2023, Richardson again threatened the same guard, stating "I'm going to fuck you up.  I'm going to stab you like I did those bitches at CCA."[10]  Richardson threatened to kill other guards that day as well.

If convicted in this case, Richardson faces lengthy terms of incarceration.  If convicted of using or carrying a firearm in furtherance of drug trafficking, he would face a mandatory minimum 25-year sentence, consecutive to any other sentences, because he has a prior conviction in this District for that same charge in *United States v. Warren Richardson*, 99-cr-20081-CM.  In the 1999 case, Richardson told the probation officer who authored the Presentence Investigation Report ("PSIR") that he was a member of the Black Gangster Disciples.  Richardson's term of supervised release commenced in the 1999 case on March 21,

---

[6] Case No. 22-cr-20054-DDC, Doc. 43-7.

[7] *Id.*

[8] *Id.*, Doc. 43-8.

[9] *Id.*, Doc. 43-10.

[10] *Id.*, Doc. 43-13.

2014.  On October 10, 2018, Judge Murguia revoked Richardson's supervised release in the 1999 case and imposed a 36-month revocation sentence.  Richardson has been continuously in custody since his arrest on those charges since August 11, 2020.

## II.   Discussion

The government moves the court to empanel an anonymous jury; specifically, to not reveal to either the parties or their attorneys the names, addresses, and places of employment of prospective jurors.[11]  The government argues that its motion is warranted due to the serious and violent nature of the crimes charged and the history and characteristics of Richardson, who continues to pose a real threat to those around him.

Richardson opposes the motion, arguing that there are no extreme circumstances present here, such as charges or credible evidence of witness or juror tampering or intimidation that would warrant the use of an anonymous jury.  Moreover, he contends that empaneling an anonymous jury would strongly imply to jurors that they are being protected from Richardson, which would erode his constitutional right to be presumed innocent of these charges.

There is statutory authority for the Court to exercise its discretion to keep juror names confidential "in any case where the interests of justice so require."[12]  And, with the exception of the Tenth Circuit, which has not addressed the question, under some circumstances, the Circuit Courts of Appeal have condoned the practice of empaneling anonymous juries.[13]  Yet, the use of

---

[11] The government urges that the parties should be made aware of the prospective jurors' type of work, but not their places of employment.

[12] 28 U.S.C. § 1863(b)(7).

[13] *United States v. Gutierrez*, 963 F.3d 320, 330–31 (4th Cir. 2020); *United States v. Portillo*, 969 F.3d 144, 162–64 (5th Cir. 2020); *United States v. Mikhel*, 889 F.3d 1003, 1031–32 (9th Cir. 2018); *Unites States v. LaFond*, 783 F.3d 1216, 1223–24 (11th Cir. 2015); *United States v. Ramirez-Rivera*, 800 F.3d 35–36 (1st Cir. 2015), *abrogated in part on other grounds by United States v. Leoner-Aguirre*, 939 F.3d 310, 314–16 (1st Cir. 2019); *United States v. Kadir*, 718 F.3d 115, 120–21 (2d Cir. 2013); *United States v. White*, 698 F.3d 1005, 1016–17 (7th Cir. 2012); *United States v. Moore*, 651 F.3d 30, 48–50 (D.C. Cir. 2011); *United States v. Deitz*, 577 F.3d 672, 684–

anonymous juries "undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence,"[14] and, thus, should be used only when necessary to protect the safety of the jurors or to protect the jurors and the integrity of their deliberations from intimidating or prejudicial influences.[15]

To that end, in determining whether an anonymous jury is warranted in this case, the Court employs the factors instructed by the Eleventh Circuit in *United States v. Ross*:

> (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.[16]

Defendant Richardson is charged with conspiracy to distribute and possess with intent to distribute cocaine base. While Richardson is the only defendant charged in this case, the government intends to present evidence that others were involved in the conspiracy. Audio/video recordings of the controlled buys evidence the informant purchasing from the defendant and/or others. In some transactions, the recordings depict Richardson and others jointly distributing the crack cocaine. Most of the transactions occurred at a common location. Based on the conspiracy charge, there is evidence that Richardson was involved in an organization that distributed cocaine, though the evidence may not establish he was involved in organized crime in the lay sense of the term. Furthermore, Richardson admitted to the probation

---

86 (6th Cir. 2009); *United States v. Peoples*, 250 F.3d 630, 635–36 (8th Cir. 2001); *United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993).

[14] *United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) (citations omitted).

[15] *See United States v. Edwards*, 303 F.3d 606, 613 (5th Cir. 2002).

[16] 33 F.3d 1507, 1519–20 (11th Cir. 1994) (citation omitted).

officer who authored his PSIR in the 1999 case in this District, that Richardson was a member of the Black Gangster Disciples,  That is an admission of involvement in organized crime.

The second factor also weighs in the government's favor.  In many of the alleged threats that Richardson reportedly made to correctional officers from 2018 through 2023, he claimed that his "boys" or his "son" would kill correctional officers in the detention facility parking lot upon Richardson's order.  Richardson has allegedly repeatedly threatened harm to correctional officers through his participation in a group or his association with others who have the capacity to harm jurors.

Moreover, the charges in this case are based on evidence that Richardson and other members of the conspiracy repeatedly, and perhaps routinely, possessed weapons in furtherance of drug trafficking.  Richardson is charged with such on December 18, 2014, when he was apprehended with a firearm and drugs in a stolen vehicle that was stopped after a high-speed car chase.  And, there is evidence that two double-shootings occurred during the time of the conspiracy at the house where many of the conspirators' drug transactions occurred.

Further, there is evidence that the informant who made a series of controlled purchases from Richardson and coconspirators, was shot multiple times and killed on December 13, 2014, after most of the coconspirators had been charged with the drug sales and were likely privy to information from which they could glean the identity of the informant.  On December 13, most of the coconspirators were detained and thus not capable of murdering the informant, but Richardson was not in custody on that date. Moreover, the tool markings on the many shell casings recovered from the murder scene on December 13 were consistent with tool markings on bullets test-fired from the firearm found in Richardson's possession when he was arrested on December 18.  In sum, there is evidence that Richardson was part of a group with the capacity to

harm the informant, correctional officers and, thus, jurors.  While the actions at issue in this case occurred ten years ago, in 2014, Richardson's current threats indicate that he may still be part of such a group.

There is ample evidence that Richardson has made past attempts to interfere with the judicial process.  Certainly, murdering or aiding and abetting the murder of the confidential informant would be such an interference.[17]  Of course, most of his alleged conduct—attempted murder, assaults, and threats—has been directed at correctional officers rather than persons directly involved in this case.  Yet, he also told a Deputy Marshal that he would assault his attorney.  As the government argues, Richardson's conduct demonstrates his desire to do physical harm to others, especially those he views as responsible for his incarceration.  At the same time, Richardson points out that he was charged with related crimes for drug dealing and possession in state court in 2016, a case in which there was no anonymous jury.  That case concluded with a hung jury, and there was no evidence that he or others threatened the jury, witnesses, or otherwise impeded the judicial process.

The Court is sufficiently concerned about Richardson's alleged threats and violent conduct directed at correctional officers and his threat regarding his attorney, that the Court will confer with the United States Marshals Service on reasonable measures that should be taken to ensure the safety of *everyone* in the courtroom during Richardson's trial.  Yet, Richardson has

---

[17] As the Court explains in its Memorandum and Order ruling on the parties' motions in limine, the Court does not find by a preponderance of the evidence that Richardson caused the unavailability of the informant as a witness and, thus, the Court concludes that the government may not rely upon the forfeiture-by-wrongdoing exception to the hearsay rule in seeking admissibility of evidence that Richardson murdered or acquiesced in the murder of the informant.  And, the Court's ruling was of course based on evidence presented at the limine hearing.  Since one of the charges in the Indictment is based on Richardson unlawfully possessing the firearm on December 13, the date of the murder, presumably the government will be presenting evidence at trial that Richardson murdered, aided and abetted the murder of the informant, or otherwise possessed the murder weapon on the date of the murder.

made no threats against witnesses or jurors in this case, and apparently had engaged in no such concerning conduct during his 2016 state court trial.

The fourth *Ross* factor weighs in favor of the government's request.  If convicted, Richardson faces a mandatory minimum of 25 years on the charge of using or carrying a firearm in furtherance of a drug trafficking crime, a sentence that must run consecutive to sentences on all other counts of conviction.

But the fifth *Ross* factor weighs against the government's request.  There has been little or no pretrial publicity about this case, which arises out of events that occurred ten years ago in the metropolitan area of Kansas City, Kansas.  Furthermore, the potential jury pool will come from multiple counties in eastern Kansas; this will not be a jury pool comprised of people from a small, rural community where there may be common knowledge of Richardson and the matters charged in this case.[18]

On balance, the *Ross* factors counsel the Court that a fully anonymous jury is not warranted in this case.  There is evidence that a firearm possessed by Richardson was used to murder the informant, who would have been a key witness in this case.  There is some risk of juror safety.  There may be a more heightened risk of safety to those that Richardson has directly threatened, including his attorney and correctional officers.  Furthermore, there is evidence that Richardson has associates or means to threaten juror safety or otherwise compromise the integrity of their deliberations with intimidating or prejudicial influences.

---

[18] *Cf. Yates v. McKune*, No. 05-3373-JTM, 2007 WL 2155652, at *3 (D. Kan. July 26, 2007) (denying habeas challenge to trial court's decision to empanel a partially anonymous jury, in which the names of the jurors were known to the court and court personnel, but not the parties, and each juror was referred to by his or her assigned number, based on evidence that three codefendants had an explicit conversation about killing witnesses, the case had received fairly high publicity and involved a relatively small community).

At the same time, Defendant Richardson's counsel has long practiced in this District and is held in high regard for his unquestionable integrity, and the Court is fully confident that his counsel will abide by the Court's orders and directives on disclosure.

For these reasons, the Court partially grants the government's request, and orders that the names, addresses, and places of employment shall not be disclosed to Richardson, but shall be disclosed to Richardson's attorneys and trial staff,[19] and to government counsel and trial staff. Richardson's counsel is free to disclose to Richardson other information about prospective jurors so long as the information will not allow Richardson to identify their name, home, business or employment addresses, or that of their spouses or household residents.

In the courtroom, the Court will address the jurors by their juror number, not their names, and directs counsel to address them only by their juror number as well. The Circuit Courts of Appeal that have considered this issue counsel that when a jury is fully anonymous, the Court must mitigate any prejudicial effects from this procedure by giving the jurors a plausible, neutral, nonprejudicial reason for addressing them by number rather than by name.[20] Even though this Court is not ordering a fully anonymous jury, the Court will nonetheless provide such a plausible, neutral, nonprejudicial reason to the prospective jurors in order to avoid any inference

---

[19] By trial staff, the Court means legal assistants, paralegals, investigators, jury consultants, and other trial support personnel engaged or employed by counsel. The Court holds counsel responsible for ensuring that none of those individuals disclose this information to Richardson, his family, associates, witnesses, or anyone else that is not within the Court's definition of trial staff.

[20] *See United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991) ("[W]e have found the danger that the jury might infer that the need for additional security was attributable to the character of the defendant was minimized where the court took care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities or for taking other security measures."); *see also Ramirez-Rivera*, 800 F.3d at 36 (explaining that the district court mitigated prejudice by telling jury they would be anonymous to avoid media interference and by repeatedly instructing jury that defendant was presumed innocent); *Mikhel*, 889 F.3d at 1031–32 (explaining that the district court told jurors that anonymity was routine to avoid media attention); *Moore*, 651 F.3d at 48–50 (explaining that the district court told jury that this procedure was for convenience and to prevent external influences).

that Richardson should not know their names, and in order to protect Richardson's fundamental

rights.  Thus, the Court will provide the following neutral explanation to the jury:

> During the jury selection process and during the trial itself, we will
> address you by your number, rather than your first or last name.
> This procedure helps us make a better record of who we are
> conversing with during jury selection, given the fact that we have
> called several dozen people here as prospective jurors.  It also
> helps us have a better record if for some reason we converse with
> you during the trial.  I have already provided to counsel your full
> names, the name of the community in which you reside and your
> employment.  In the interests of time, none of us will be asking
> you for that information here in court, although I anticipate that
> you will be asked questions about your type of work, currently and
> in the past, your job responsibilities and your skills, education and
> areas of expertise.  As I have explained, voir dire is an important
> part of the trial process and the government and Mr. Richardson
> have a right to make selection decisions based on a full
> understanding of your background, experience, expertise and
> views.

The Court certainly invites counsel to offer any additions or changes to the above language.

Furthermore, as is its practice, the Court will instruct the jury multiple times that Richardson is

presumed innocent.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion for

Anonymous Jury (Doc. 88) is **granted in part and denied in part**.  The potential jurors' names,

addresses, and places of employment shall not be disclosed to Richardson, but shall be disclosed

to Richardson's attorneys and trial staff, and to government counsel and trial staff, as described

more fully in this Order.

**IT IS SO ORDERED.**

Dated: March 6, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE